[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 25-5165**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

SUSAN TSUI GRUNDMANN,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District
Court for the District of Columbia

———————————

**OPPOSITION TO MOTION FOR A STAY PENDING APPEAL AND AN
ADMINISTRATIVE STAY**

———————————

Norman L. Eisen, D.C. Bar #435051
Tianna J. Mays, D.C. Bar #90005882
Jon M. Greenbaum, D.C. Bar #489887
Pooja Chaudhuri, D.C. Bar #888314523
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 601-8678

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE ............................................................3

  A.  STATUTORY BACKGROUND ...................................................3

  B.  FACTUAL AND PROCEDURAL BACKGROUND .....................4

ARGUMENT .....................................................................................6

  A.  The government cannot make a strong showing that they are likely to prevail on the merits .............................................................7

    1.  The limitations on removing FLRA members is constitutional .................7

    2.  The district court properly awarded injunctive relief as a remedy. ...........12

  B.  The government cannot satisfy any of the remaining stay factors ................17

CONCLUSION .................................................................................22

#125073816v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beame v. Friends of Earth*,
  434 U.S. 1010 (1977)...........................................................................21

*Clinton v. City of New York*,
  524 U.S. 417 (1998)...........................................................................17

*Collins v. Yellen*,
  594 U.S. 220 (2021)............................................................................8

*Dellinger v. Bessent*,
  2025 WL 559668 (D.C. Cir. Feb. 15, 2025).........................................13

*Dellinger v. Bessent*,
  No. 25-5052 ........................................................................................1

*FEC v. NRA Political Victory Fund*,
  6 F.3d 821 (D.C. Cir. 1993)...............................................................12

*Fontem US, LLC v. U.S. Food & Drug Admin.*,
  No. 22-1076, 2022 WL 2761393 (D.C. Cir. July 12, 2022)..................21

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)...........................................................................17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Board*,
  561 U.S. 477 (2010)............................................................................8

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)...........................................................................15

*Harris v. Bessent ("Harris I")*,
  No. CV 23-412, 2025 WL 679303 (D.D.C. Mar. 04, 2025) .................19

*Harris v. Bessent ("Harris II")*,
  Case No. 25-5055 (D.C. Cir. March 6, 2025) ...........................*passim*

*Humphrey's Ex'r v. United States*,
   295 U.S. 602 (1935).........................................................................7, 11, 15

*KalshiEX LLC v. CFTC*,
   119 F. 4th 58 (D.C. Cir. 2024)........................................................2, 6

*LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*,
   No. 25-5197 ........................................................................................1

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ...........................................................16

*Miller v. Clinton*,
   687 F.3d 1332 (D.C. Cir. 2012) ........................................................14

*Mississippi v. Johnson*,
   4 Wall. 475 (1867) ............................................................................14

*Morrison v. Olson*,
   487 U.S. (1988).................................................................................8

*Myers v. United States*,
   272 U.S. 52 (1926)............................................................................15

*Nat'l Postal Policy v. Postal Regulatory Comm'n*,
   No. 17-1276, 2021 WL 1044417 (D.C. Cir. Mar. 1, 2021)................7

*Sampson v. Murray*,
   415 U.S. 61 (1974)......................................................................13, 14

*In re Sawyer*,
   124 U.S. 200 (1888)....................................................................15, 16

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020)...................................................................8, 9, 11

*Service v. Dulles*,
   354 U.S. 363 (1958)..........................................................................14

*Severino v. Biden*,
   71 F.3d 1038 (D.C. Cir. 2023)....................................................16, 17, 18

iii

*Swan v. Clinton*,
   100 F.3d 973 (1996)..................................................................14, 16, 17, 18

*Swan v. Clinton*,
   100 F.3d at 971 ........................................................................................16

*Trump v. Wilcox (Wilcox III)*,
   145 S. Ct. 1415 (2025)......................................................................*passim*

*Vitarelli v. Seaton*,
   359 U.S. (1959)........................................................................................14

*White v. Berry*,
   171 U.S. 366 (1898)............................................................................15, 16

*Wiener v. United States*,
   357 U.S. 349 (1958)..............................................................................7, 15

*Wilcox v. Trump*,
   No. 25-5037 ...............................................................................................1

*Wilcox v. Trump ("Wilcox I")*,
   No. CV 25-334, 2025 WL 720914 (D.D.C. March 6, 2025).....................20, 22

*Wilcox v. Trump (Wilcox II)*,
   Case No. 25-5057 (D.C. Cir. Mar. 10, 2025) ..................................20

*Wisconsin Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985)......................................................6

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)................................................................17

**Statutes**

Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 (Oct. 13,
   1978) .....................................................................................3

Federal Service Labor-Management Relations Statute (FSLMRS),
   5 U.S.C. ch. 71 .............................................................*passim*

   § 7101(a)(2) ....................................................................23

iv

§ 7104(a) ................................................................................................3

§ 7104(b) ..........................................................................................3, 5, 10

§ 7104(c) ................................................................................................3

§ 7104(f) ................................................................................................4

§ 7104(f)(1) ..........................................................................................10

§ 7104(f)(2) ..........................................................................................10

§ 7105(a)(1) ............................................................................................3

§ 7105(a)(2) ............................................................................................4

§ 7105(a)(2)(G) ................................................................................10, 11

§ 7105(a)(2)(H) ....................................................................................11

§ 7105(g)(3) ..........................................................................................11

§ 7105(h) ..............................................................................................11

§ 7123(b) ..............................................................................................11

Pub. L. 95–454, tit. VII, § 7104 (1978), 92 Stat. 1196 ..............................3

**Other Authorities**

B-134614, 1958 WL 1888 (Mar. 3, 1958) ................................................14

# INTRODUCTION

The Court should deny the government's Motion for a Stay Pending Appeal and an Administrative Stay ("Motion") because the government cannot demonstrate irreparable harm as well as the other three factors required to obtain a stay.

The district court granted summary judgment and declaratory and injunctive relief to Plaintiff-Appellee Grundmann on March 12, 2025 because her removal as a member of Federal Labor Relations Authority ("FLSA" or Authority) violated the Federal Service Labor-Management Relations Statute ("FSLMRS"). The government cannot and does not explain why it did not notice its appeal until May 8. 2025 and did not move for a stay until May 27, 2025. This delay undermines any argument that Ms. Grundmann's continued service on the Authority causes any irreparable harm to the government because, if it did, the government would have not stood idle for more than half of March, all of April, and almost all of May.

The government's lack of urgency stands in marked contrast to the other independent agency head removal cases during this Presidential Administration that have been before this Circuit after final judgment. *Dellinger v. Bessent*, No. 25-5028; *Wilcox v. Trump*, No. 25-5037; *Harris v. Bessent*, No. 25-5055; and *LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5197. In those cases, the government moved for a stay almost immediately, whether in the district court, this Court, or the Supreme Court.

1

The government's irreparable harm argument is further weakened by the fact that they can legally replace Ms. Grundmann on the Authority through the nomination and confirmation process under the FSLMRS as early as July 1, 2025.

This Circuit has a strict standard of requiring a moving party seeking a stay to demonstrate irreparable harm and has denied a stay motion for that sole reason, including "when the question on the merits is close and difficult." *KalshiEX LLC v. CFTC*, 119 F. 4th 58, 63 (D.C. Cir. 2024). We have already seen this year, in this Circuit and the Supreme Court, that the question of when Congress can limit Presidential authority to remove a member of a multimember independent agency is close and difficult. These cases raise complex constitutional issues as well as detailed analyses of whether an agency leadership group is exercising "substantial executive power," and the appellate courts that have issued decisions on motions for stay have often been divided. Given that the government cannot demonstrate irreparable harm here, the Court should deny the Motion on that basis alone and leave the complex merits analysis for full briefing and argument. If this Court elects to address all four factors, the government cannot satisfy its burden as to any of them, let alone all of them, for the reasons set forth below.

2

## STATEMENT OF THE CASE

### A. STATUTORY BACKGROUND

In 1978, Congress enacted the FSLMRS, 5 U.S.C. ch. 71, as part of the comprehensive Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 (Oct. 13, 1978). Within the FSLMRS, Congress created the Federal Labor Relations Authority to "carry[] out the purpose" of the statute. *Id.* § 7105(a)(1). The Authority is multimember and bipartisan and serve five-year staggered terms. *Id.* § 7104(a), (c); Pub. L. 95–454, tit. VII, § 7104 (1978), 92 Stat. 1196. A member's term "shall not expire until the earlier of (1) the date on which the member's successor takes office, or (2) the last day of the Congress beginning after the date on which the member's term of office would (but for this paragraph) expire." 5 U.S.C. § 7104(c).

Members of the Authority (1) are appointed by the President with the advice and consent of the Senate and (2) may only be removed after notice and a hearing and only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 7104(b). The President designates a Chairman: "The President shall designate one member to serve as Chairman of the Authority. The Chairman is the chief executive and administrative officer of the Authority." *Id.* § 7104(b).

The FLRA's primary statutory duties are quasi-judicial, in that they encompass resolving unfair labor practice complaints, determining the appropriateness of units for labor organization representation, adjudicating

3

exceptions to arbitrators' awards, adjudicating legal issues relating to the duty to bargain, and resolving impasses during collective bargaining. *Id.* § 7105(a)(2). Executive functions of investigating unfair labor practices and filing and prosecuting complaints are delegated to the General Counsel who is appointed by the President with the advice and consent of the Senate, and who can be removed by the President "at any time." *Id.* § 7104(f).

## B. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Grundmann was nominated by the President and confirmed by the Senate on May 12, 2022 to the FLRA for a term set to expire on July 1, 2025. ECF No. 22 at 5. Under the FSLMRS, she is permitted to continue serving until either her successor takes office or the last day of the Congress beginning after the original expiration date, which in her case would fall in January 2029. *Id.* at 5–6 (cleaned up).

 On February 10, 2025, Ms. Grundmann received a two-sentence email from a White House informing her that President Trump was removing her. *Id.* at 6. "She did not receive notice or a hearing, nor was any 'inefficiency, neglect of duty, or malfeasance in office' identified." *Id.* Ms. Grundmann was unable to perform her duties thereafter. *Id.*

Ms. Grundmann filed a Complaint against President Trump and Colleen Duffy Kiko regarding her removal and moved for summary judgment. *Id.* at 7. The

4

defendants cross-moved for summary judgment. *Id.* Defendants conceded that Ms. Grundmann's removal violated the FSLMRS but claimed that the removal provision of the statute for FLRA members is unconstitutional and that the President has the at-will authority to remove Ms. Grundmann under Article II of the Constitution. *Id.* at 2–3.

On March 12, 2025, the district court granted Ms. Grundmann's Motion for Summary Judgment and denied Defendants' Cross-Motion in an Order, ECF No. 21, and accompanying Memorandum Opinion, ECF No. 22. Regarding remedies, the district court issued declaratory relief stating that Ms. Grundmann's removal was unlawful, that she remained a member of the FLRA, and would continue to do until expiration of her term or if the President removed her consistent with the provisions of 5 U.S.C. § 7104(b). ECF No. 21 at 1. The district court also enjoined Defendant Kiko "from removing Ms. Grundmann from her office without cause or in any way treating Ms. Grundmann as having been removed, from impeding in any way her ability to fulfill her duties as a Member of the FLRA, and from denying or obstructing her authority or access to any benefits or resources of the office." *Id.* at 2.

Ms. Grundmann resumed working on March 13, 2025. The government waited fifty-seven days before filing their notice of appeal on May 8. 2025. ECF No. 24. It waited seventy-six days before moving for a stay in the district court on May 27, 2025. ECF No. 26. On June 13, 2025, the District Court denied the motion for

5

stay in an Order, ECF No. 30, and accompanying Memorandum Opinion. ECF No. 29.

## ARGUMENT

"A *stay* pending appeal is an 'extraordinary' remedy. To obtain such exceptional relief, the *stay* applicant must (1) make a strong showing that it is likely to succeed on the merits"; (2) *demonstrate* that it will be irreparably injured before the appeal concludes; (3) show that issuing a *stay* will *not* substantially injure the other parties interested in the proceeding; and (4) establish that the public interest favors a *stay*." *KalshiEX*, 119 F.4th at 63 (cleaned up) (emphases in original). "[When] the question on the merits is close and difficult, a [Moving Party] cannot obtain a *stay* . . . [if] it has *not demonstrated* that it or the public will be irreparably *harmed* while its appeal is heard. That failure is fatal to [a Movant's] *stay* request because a showing of *irreparable harm* is a necessary prerequisite for a *stay*." *Id.* at 63–64 (emphases in original); *id.* at 64 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) ("'We believe that analysis of the second factor disposes of the *stay* motions and, therefore, address only whether the petitioners have *demonstrated* that in the absence of a *stay*, they will suffer *irreparable harm*.'"). (emphases in original); *Nat'l Postal Policy v. Postal Regulatory Comm'n*, No. 17-1276, 2021 WL 1044417 at *1 (D.C. Cir. Mar. 1, 2021) ("ORDERED that the motion

6

#125073816v1

for stay be denied. Petitioner has not demonstrated the type of imminent and irreparable harm necessary for a stay.")

The government cannot satisfy any of the factors, let alone all of them. In particular, the delay in waiting fifty-seven days to notice the appeal and seventy-seven days in moving for a stay undermine any claim of irreparable harm, and this is fatal to the stay request.

### A. The government cannot make a strong showing that they are likely to prevail on the merits

#### 1. The limitations on removing FLRA members is constitutional

Because the government concedes that it has violated the removal provision, it must show that the provision is unconstitutional. In *Humphrey's Executor v. United States,* 295 U.S. 602 (1935), the Supreme Court established that under certain circumstances Congress may impose limitations on the President's authority to remove a principal of an independent agency. The Supreme Court has consistently reaffirmed the "*Humphrey's Executor* exception" to the President's authority to remove Executive Branch officials. *Wiener v. United States*, 357 U.S. 349 (1958) (applying *Humphrey's Executor* in holding that the President illegally removed members of the War Crimes Commission); *Morrison v. Olson*, 487 U.S. at 654, 688 & n.25 (1988) (recognizing that *Humphrey's Executor* is still good law); *Free Enter. Fund v. Pub. Co. Acct. Oversight Board*, 561 U.S. 477, 483 (2010) (declining to

7

"reexamine" *Humphrey's Executor*); *Seila Law LLC v. CFPB*, 591 U.S. 197, 204, 228 (2020) (expressly stating twice that it was not revisiting *Humphrey's Executor*); *Collins v. Yellen*, 594 U.S. 220, 251 (2021) (same).

When describing the two exceptions to the President's authority to remove officers in *Seila Law*, the Court characterized the *Humphrey's Executor* exception as applying to "multimember expert agencies that do not wield substantial executive power." *Seila Law*, 591 U.S. at 218.

The FLRA is a multimember agency and undisputedly satisfies the first component of the *Humphrey's Executor* exception. The Court in *Seila Law*, drawing from *Humphrey's Executor*, stated that such a multimember agency includes officials "from both sides of the aisle" and it has "staggered terms" to "prevent[] complete turnovers in agency leadership and guarantee[] that there would always be some [agency leaders] who had accrued significant expertise." *Seila Law*, 591 U.S. at 218. The government does not contest that the FLRA meets this factor.

The more fact-intensive question is the second component of the *Humphrey's Executor* exception: whether the FLRA wields "substantial executive power." The government asserts that, under *Seila Law*, the *Humphrey's Executor* exception does not apply when the agency exercises any executive power. Motion at 10. This does not square with the actual holding of *Seila Law*. *Seila Law* uses different language in different parts of the opinion, sometimes discussing whether the agency in question

8

wields "significant" executive power, 591 U.S. at 199, 220, other times "substantial" executive power, *id.* at 218, and other times "any" executive power, *id.* at 216. But, as discussed above, when the Court described the exceptions, it used the phrase "substantial executive power" for the *Humphrey's Executor* exception. Moreover, the other opinions categorize the majority's test as "substantial executive power." *Id.* at 239 (Thomas, J., concurring and dissenting) ("the Court takes a step in the right direction by limiting *Humphrey's Executor* to 'multimember expert agencies that *do not wield substantial executive power*'") (cleaned up) (emphasis in original); *id.* at 250 (Kagan, J., concurring and dissenting) (the Court concludes that *Humphrey's Executor* must be limited to multimember expert agencies that *do not wield substantial executive power*") (emphasis in original). In *Trump v. Wilcox (Wilcox III)*, 145 S. Ct. 1415 (2025), the Supreme Court stayed the lower court decision in part because "the Government [was] likely to show that both the NLRB and MSPB exercise considerable executive power." A fair reading of the cases shows that the exception the threshold is whether the agency exercises "substantial" or "considerable" executive power as opposed to "any" executive power.

Here, Congress did not grant the members of the Authority with "substantial" or "considerable" executive authority. Contrary to the government's characterizations, the three-Member FLRA board's authority is primarily quasi-judicial because the Members, as a board, predominantly act as an adjudicative

appellate body, resolving legal disputes after factfinding has already occurred by administrative law judges or in arbitration.  5 U.S.C. § 7105(a)(2)(G), (H). This appellate function—the primary function of the multimember body of the FLRA— is exclusively adjudicative in nature.

In contrast, the executive functions of the agency are carried out by officers who are removable at will by the President.  The President designates one of the members of the Authority as the Chairman, who serves as "the chief executive and administrative officer of the Authority," 5 U.S.C. § 7104(b). The General Counsel exercises the executive functions of investigating, filing, and prosecuting complaints. 5 U.S.C. § 7104(f)(2). The General Counsel is appointed by the President with the advice and consent of the Senate and the "General Counsel may be removed at any time by the President." 5 U.S.C. § 7104(f)(1).

In characterizing the FLRA board's functions as "executive," the government points to the Authority's power to "conduct[] hearings and resolve[] complaints of unfair labor practices" as evidence of its purported executive power. Motion at 11 (citing 5 U.S.C. § 7105(a)(2)(G)).  But these functions are characterized by the Court in *Seila Law* as adjudicative. 591 U.S. at 207.

The government also cites to the Authority's ability to "require [an agency or labor organization] to take any remedial action it considers appropriate to carry out the polices" of the FSLMRS, 5 U.S.C. § 7105(g)(3); petition to enforce such an order

10

in federal court, *id.* § 7123(b); and send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions, *id.* § 7105(h). Motion at 11–12. But the FLRA does not go to court to bring new enforcement actions through litigation. Better understood, the FLRA merely goes to court to enforce its own orders sitting in its adjudicative function, which falls within the Humphrey's Executor exception of "'discharg[ing]'" its "'quasi-judicial powers.'" *Seila Law*, 591 U.S. at 216 (quoting *Humphrey's Ex'r*, 295 U.S. at 632).

The government similarly highlights that the FLRA can "unilaterally issue[] final decisions awarding legal and equitable relief." Motion at 11 (citing 5 U.S.C. § 7105(a)(2)(G)). In *Seila Law*, the Supreme Court characterized this function as adjudicative, 591 U.S. at 207, but was concerned about that the Consumer Financial Protection Bureau Director could "*unilaterally*" take various actions, including adjudicate. *Seila Law*, 591 U.S. at 225 (emphasis in original). In contrast, the Members of the Authority act as a body in adjudicating.

The Government fails to explain how the Authority wields "substantial executive power" as the Supreme Court determined was required for at-will removal of an agency's single director in *Seila Law.* Setting aside the conclusory assertion that the FLRA functions under the ambit of the Executive branch, the FLRA's functions highlighted by Appellants illustrate that the Authority functions as a quasi-

11

judicial body *__without__* substantial executive authority. Simply stated, if Appellants'
position were correct, then virtually any function of the government could be
recharacterized as "executive" simply by virtue of an agency having any discretion
over any decisions, contrary to the well-established holding of *Humphrey's Executor*
and its progeny, which *Seila Law* declined to call into question. *See, e.g.*, *FEC v.
NRA Political Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) (Federal Election
Commission, "patterned on the classic independent regulatory agency," can both
make rules and other retrospective remedies).

### 2.  The district court properly awarded injunctive relief as a remedy.

The government's argument regarding the District Court's power to grant
injunctive relief essentially boils down to this: its view is that Article III courts are
powerless to issue any equitable remedy when the President violates a for-cause
removal statute. Motion at 17–23. But this Court, sitting *en banc*, recently rejected
that position. *See Harris v. Bessent* ("*Harris II*"), No. 25-5037, 2025 WL 1021435,
at *2 (D.C. Cir. Apr. 7, 2025) (en banc) ("The government . . .  has not shown a
strong likelihood of success on the merits of its claim that there is no available
remedy for Harris or Wilcox, or that allowing the district court's injunctions to
remain in place pending appeal is impermissible.").[1]  Indeed, to hold that an Article

---

[1] In *Wilcox III*, the Supreme Court did not address the remedial issue.

III judge cannot provide equitable relief in this case *after* finding that the removal statute is constitutional would not only lead to a remedial dead end here but in any other potential case challenging the removal of the head of an independent agency, including the Federal Reserve.[2]

The government's remaining arguments are unavailing. First, the government asserts that "[n]either this Court nor the Supreme Court *has ever* suggested that reinstatement is an appropriate remedy." Motion at 17 (emphasis added). This assertion is incorrect. In *Sampson v. Murray*, 415 U.S. 61 (1974), the Supreme Court "recognize[d] that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found" and injunctive relief would be appropriate. *Id.* at 92 n.68. And *Sampson*, *id.* at 72, relied on *Service v. Dulles*, where a discharged foreign service officer obtained injunctive

---

[2] The government quotes from parts of two sentences from Judge Katsas's dissenting opinion from *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025), to make the argument that reinstatement cannot be a remedy in a removal case. Motion at 17. These quotes are taken from the section of his opinion addressing the government's irreparable harm, not whether the government was likely to establish likelihood of success on the merits or what remedies were available to Dellinger. *Dellinger v. Bessent*, 2025 WL 559669, at *14. Even if the government's characterization was correct, it comes from a dissenting opinion and the en banc decision in *Harris* put this issue to rest.

13

and declaratory relief from the district court after the Supreme Court found his dismissal unlawful and remanded the matter. 354 U.S. 363, 389 (1958); *see also* B-134614 (Comp. Gen.), 1958 WL 1888 (Mar. 3, 1958) (directing Secretary of State to "give effect" to declaratory judgment by "restor[ing] plaintiff to previous position); *see also Vitarelli v. Seaton*, 359 U.S. at 537, 546 (1959) (federal employee's dismissal unlawful and employee "entitled to the reinstatement which he seeks"); *Miller v. Clinton*, 687 F.3d 1332, 1360 n.7 (D.C. Cir. 2012) (public servants facing "unconstitutional discrimination" may obtain "an injunction").

Second, the cases the government cites in support of its claim—that no court has ever permitted reinstatement—do not directly address the issue or do not foreclose injunctive relief. Motion at 17–18. *Mississippi v. Johnson* specifically left open whether a judicial injunction could require the President to perform a purely "ministerial" duty, 4 Wall. 475, 498–99 (1867), an issue not present here because the injunction is not against the President. In *Swan v. Clinton*, 100 F.3d 973, 979 (1996), this Circuit found that injunctive relief against subordinate officials could provide an unlawfully removed board member an adequate remedy. The other cases cited by the government for the proposition that backpay is the exclusive remedy do not foreclose the availability of injunctive relief. *Humphrey's Ex'r*, 295 U.S. at 612, *Myers v. United States*, 272 U.S. 52, 106 (1926); *Wiener*, 357 U.S. at 349. After all, in *Humphrey's Executor* the *estate* sought backpay because the plaintiffs had died,

14

making "reinstatement" impossible. 295 U.S. at 602. Similarly, in *Myers*, the official sought backpay. 272 U.S. at 106. And in *Wiener*, the plaintiff initially pursued a legal action (quo warranto) to recover his position on the War Claims Commission, but that claim became moot when the Commission's term expired, and so he sought backpay. 357 U.S. at 351 n. 1.

Third, the government's reliance on *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)—for the proposition that a court's equitable powers must be limited to traditional principles of equity jurisdiction—is unpersuasive. Motion at 19. The Court in *Grupo Mexicano* did not hold as a categorical matter that equitable remedies are confined to their 18th century forms but expressly acknowledged that "equity is flexible." *Id.* at 322. The government's invocation of 19th-century cases, *White v. Berry*, 171 U.S. 366 (1898) and *In re Sawyer*, 124 U.S. 200 (1888), to support its position that a court may not enjoin the removal of an executive officer is similarly unconvincing. Motion at 19–20. The Court in *White* and *In re Sawyer*, while acknowledging the limits on the availability of relief at *equity*, also made clear that equivalent remedies were available at *law*. *White*, 171 U.S. at 377; *In re Sawyer*, 124 U.S. at 212 (expressly acknowledging availability of mandamus remedy at law). This understanding was well established even as early as *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)

15

where the Court, considering a case involving a Senate-confirmed official whose commission was wrongfully withheld, found the scenario presented "a plain case for a mandamus." *Id.* at 173. With the merging of the federal courts of law and equity in 1938, the relevant consideration is whether the remedy was historically available, not whether it was provided by a court of law or a court of equity.

Fourth, the government characterizes the district court's remedy as a "de jure reinstatement" of Plaintiff Grundmann, which, according to the government, violates Title II by going beyond the "de facto reinstatement" remedy discussed in *Swan v. Clinton,* 100 F.3d at 971. Motion at 20–21. But the district court's reinstatement, which it called de facto reinstatement, was consistent with the kind of reinstatement recognized in *Swan* and *Severino v. Biden*, 71 F.3d 1038 (D.C. Cir. 2023). ECF No. 22 at 25–30. The government nevertheless claims that what renders the relief "de jure" and consequently impermissible here is the district court's explicit declaration that the removal was unlawful and that Ms. Grundmann shall continue to serve as a FLRA Member. The district court's remedy falls well within the scope of Article II and is consistent with Supreme Court precedent addressing the proper remedy for when a President violates federal law. A proper remedy is to issue declaratory but not injunctive relief against the President and issue declaratory and injunctive relief against subordinate federal officials. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585–89 (1952); *Franklin v. Massachusetts*, 505 U.S. 788, 802–03

16

(1992); *Clinton v. City of New York*, 524 U.S. 417, 421 (1998). That is exactly what the district court did here. Notably, the government itself previously acknowledged that the court "could issue a declaratory judgment stating that Ms. Grundmann's removal was unlawful." ECF No. 22 at 20.

Finally, the government claims that the district court's reliance on this Circuit's precedents in *Swan* and *Severino* is "misplaced" because both concerned standing and not the merits. Motion at 21–23. The fact that the remedial questions arose in the context of standing and that neither case was decided on the merits is beside the point, since the relevant question this Circuit addressed was whether could provide an equitable remedy for wrongful removal. As *Swan* and *Severino* confirm, the answer to that question is "yes." *Swan*, 100 F.3d at 979–81; *Severino*, 71 F.4th at 1042–43.

### B. The government cannot satisfy any of the remaining stay factors

The government leans heavily on the Supreme Court's order in *Wilcox III* regarding the other stay factors. It twice quotes the Supreme Court's statement that "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" Motion at 1, 23 (quoting *Wilcox III*, 145 S. Ct. at 1415). Again, quoting *Wilcox III*, it states, "a stay was warranted [in those cases] 'to avoid the disruptive effect of the repeated removal and

17

reinstatement of officers during the pendency of this litigation,'" and [t]hat logic applies here." Motion at 1 (quoting *Wilcox III*, 145 S. Ct. at 1415). Regarding irreparable harm specifically, it claims the injunction causes irreparable harm to the President because "a person the President has chosen to remove from office is exercising executive power over the President's objection." Motion at 23.

In this case, they elected to wait two and a half months after the district court's decision before moving for a stay and fifty-seven days before even filing a notice of appeal. ECF No. 25. For seventy-six days, Plaintiff Grundmann was working without the government seeking a stay. Even if the government is suffering harm, its inaction is incompatible with its argument that is suffering *irreparable* harm by Plaintiff Grundmann doing her job, that they face a greater risk of harm than Ms. Grundmann, and that the public interest favors removal.

This differs from the NLRB and MSPB cases where the government took the position that allowing the removed board members to work for a single day was irreparable harm. Application to Stay the Judgments of the United States District Court for the District of Columbia and Request for Administrative Stay ("*Wilcox* Stay Application*"), *Wilcox III*, at 4 (U.S. Apr. 7, 2025). And the government acted with a sense of urgency reflecting its view that a single day in office was an irreparable harm. In *Harris v. Bessent*, which involves the MSPB member, the district court ruled in favor of Ms. Harris on March 4. *Harris v. Bessent,* No. CV 23-

18

412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025) ("*Harris I*"). The same day the government appealed to the D.C. Circuit, Notice of Appeal, *id.*, ECF No. 41, and filed a motion to stay pending appeal in the district court. *Id.*, ECF No. 42. When that motion was denied on March 5, *id.*, ECF No. 45, the government then moved for a stay in the D.C. Circuit the next day. Emergency Motion to Stay Underlying Order Pending Appeal, *Harris v. Bessent*, Case No. 25-5055 (D.C. Cir. March 6, 2025).

In *Wilcox v. Trump*, involving the removal of the NLRB member, the district court issued its opinion on March 6, *Wilcox v. Trump,* No. CV 25-334 (BAH), 2025 WL 720914 (D.D.C. March 6, 2025) ("*Wilcox I*"). The government noticed its appeal the same day, *Wilcox I*, ECF No. 36. It filed a Motion for Stay Court's Order Pending Appeal the next day, *id.*, ECF No. 39, that was denied on March 8. *Id.*, ECF No. 40. On March 10, the government filed an Emergency Motion to Stay Underlying Order Pending Appeal in the D.C. Circuit, *Wilcox v. Trump* (*Wilcox II*), Case No. 25-5057 (D.C. Cir. Mar. 10, 2025).  After the cases were consolidated and the D.C. Circuit en banc vacated the three-judge motion's panel decision to issue stays*, Harris II*, 2025 WL 1021435 (en banc), the government filed a motion for stay before the Supreme Court two days later. *Wilcox* Stay Application, *Wilcox III* (U.S. Apr. 9, 2025).

As illustrated above, in the *Wilcox* and *Harris* cases, each time the government filed its stay papers within two days of an adverse decision. Instead of *Wilcox III*

providing the reason why the government satisfies the irreparable harm factor here, it illustrates why the government does not. By waiting seventy-six days, the government treated Ms. Grundmann's return to work as a nonurgent matter, in contrast to their responses to Ms. Harris and Ms. Wilcox returning to work where they acted immediately. Given this significant difference, the reasoning in the Supreme Court's order regarding the equitable factors are not applicable here.

Indeed, courts have held that a delay in moving to appeal and seeking a stay substantially weakens a claim of irreparable harm. In *Beame v. Friends of Earth*, 434 U.S. 1010 (1977) (Marshall, J), the Supreme Court denied a party's motion to stay a pending disposition of a petition for certiorari when the party waited the maximum amount of time before seeking certiorari and moved for a stay twenty days after that. The Court stated that "[t]he applicants delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm." *Id.* at 1013; *see also Fontem US, LLC v. FDA*, No. 22-1076, 2022 WL 2761393, at *1 (D.C. Cir. July 12, 2022) ("[Applicant] has demonstrated that the marketing denial order is causing it harm, but by waiting more than two months after the marketing denial order's issuance to seek emergency relief, [Applicant] weakened its claim of irreparable harm." (emphasis in original).

Moreover, as the district court noted, ECF No. 29 at 7, the government may obviate any harm to it caused by the injunction by obtaining Senate confirmation of

20

Ms. Grundmann's successor. Ms. Grundmann's term will end on July 1, 2025, eight days from now, as soon as her successor is confirmed through the regular appointment process. *Id.* By prioritizing the nomination and confirmation of her successor, Defendants can achieve their objective of permanently removing Ms. Grundmann without a stay and without this Court addressing the constitutionality of the removal statute. As the district court opined, unlike in *Wilcox*, "[t]his means that a stay is not necessary 'to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation.'" ECF No. 29 at 7 (quoting *Wilcox III*, 145 S. Ct. at 1415).

As opposed to the lack of irreparable harm to the government, there is significant harm to the public interest in granting a stay. The district court noted that if a stay is granted, the FLRA would retain only two of its members, and would run the risk of deadlock, ECF No. 29 at 7, which results in a case being in abeyance until the third member is in place. The district court further noted deadlock was a significant problem when Ms. Grundmann served as part of a two-member Authority previously. *Id.* The public interest would be better served by avoiding deadlock by maintaining a three-member Authority and keeping Ms. Grundmann in place until her successor is nominated and confirmed. As in the district court, the government has not addressed how deadlock would not undermine Congress's determinations that "'labor organizations and collective bargaining in the civil service are in the

21

public interest'" and that "'the public interest demands . . . the efficient accomplishment of the operations of the Government.'" *Id.* at 9 (quoting 5 U.S.C. § 7101(a)(2)).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellee Susan Tsui Grundmann respectfully requests that the Court deny the government's Motion for a Stay Pending Appeal and for an Administrative Stay.

Dated: June 23, 2025                    Respectfully submitted,

*/s/* Jon M. Greenbaum
Norman L. Eisen, D.C. Bar #435051
Tianna J. Mays, D.C. Bar #90005882
Jon M. Greenbaum, D.C. Bar #489887
Pooja Chaudhuri, D.C. Bar #888314523
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@statedemocracydefenders.org
tianna@statedemocracydefenders.org
jgreenbaum@justicels.com
pooja@statedemocracydefenders.org

22

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,197 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Times New Roman, a proportionally spaced typeface.

*/s/ Jon M. Greenbaum*

Jon M. Greenbaum