[NOT YET SCHEDULED FOR ORAL ARGUMENT]

No. 25-5165

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

SUSAN TSUI GRUNDMANN,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United
States, et al.,

Defendants-Appellants.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

**OPENING BRIEF FOR APPELLANTS**

————————————

BRETT A. SHUMATE
    *Assistant Attorney General*

ERIC D. McARTHUR
    *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
LAURA E. MYRON
DANIEL AGUILAR
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7245*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiff-appellee is Susan Tsui Grundmann. Defendants-appellants are Donald J. Trump, in his official capacity as President of the United States of America, and Colleen Duffy Kiko, in her official capacity as Chairman of the Federal Labor Relations Authority.

No amici curiae or intervenors participated before the district court.

### B.    Ruling Under Review

On March 12, 2025, the district court (Judge Sparkle L. Sooknanan), granted summary judgment to the plaintiff and ordered that plaintiff "shall continue to serve as a Member of the Federal Labor Relations Authority." Order at 2, Dkt. No. 21, *Grundmann v. Trump*, No. 25-425 (D.D.C. Mar. 12, 2025). The district court's opinion is published at 770 F. Supp. 3d 166. Defendants seek review of the district court's opinion and order.

### C.    Related Cases

This case has not previously been before this Court.

*Wilcox v. Trump*, No. 25-5057 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a

multimember agency (the National Labor Relations Board) with statutory removal restrictions, 29 U.S.C. § 153(a).

*Harris v. Bessent*, No. 25-5055 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the Merit Systems Protection Board) with statutory removal restrictions, 5 U.S.C. § 1202(d).

*Slaughter v. Trump*, No. 25-5261 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Trade Commission) with statutory removal restrictions, 15 U.S.C. § 41.

*Boyle v. Trump*, No. 25-1628 (4th Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the Consumer Product Safety Commission) with statutory removal restrictions, 15 U.S.C. § 2053(a).

/s/Daniel Aguilar
Daniel Aguilar
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

GLOSSARY ......................................................................................... vii

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.................................................... 4

STATEMENT OF THE ISSUES...................................................... 4

STATEMENT OF THE CASE ......................................................... 4

I.    Statutory Background ..................................................... 4

II.   Factual Background and This Litigation............................. 6

SUMMARY OF ARGUMENT ........................................................ 8

STANDARD OF REVIEW .......................................................... 9

ARGUMENT......................................................................... 10

I.    The President Has Constitutional Authority To Remove FLRA
      Members At Will ........................................................ 10

      A.    The President's Presumptive Power of Removal and Its
            Limited Exceptions................................................ 10

      B.    FLRA Members Must Be Removable At Will .......................... 20

II.   The District Court Erred In Ordering The Reinstatement Of
      Principal Officers The President Had Already Removed.................. 23

CONCLUSION....................................................................... 33

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*American Bankers Association v. National Credit Union Administration,*
  934 F.3d 649 (D.C. Cir. 2019) .................................................................. 9

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service,*
  64 F.4th 1354 (D.C. Cir. 2023) ............................................................... 30

*Baker v. Carr,*
  369 U.S. 186 (1962) ......................................................................... 25, 27

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984) ................................................................ 32

*Bessent v. Dellinger,*
  145 S. Ct. 515 (2025) ....................................................................... 26, 27

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
  403 U.S. 388 (1971) ............................................................................. 18

*Buchanan v. Barr,*
  71 F.4th 1003 (D.C. Cir. 2023) ............................................................. 18

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................................. 21

*Burke v. Barnes,*
  479 U.S. 361 (1987) ............................................................................. 32

*Carlson v. Green,*
  446 U.S. 14 (1980) .............................................................................. 18

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) ....................................................................... 14, 15

*CFPB v. Seila Law LLC,*
  923 F.3d 680 (9th Cir. 2019) ............................................................... 16

*Collins v. Yellen,*
   594 U.S. 220 (2021) ............................................................... 18, 19, 22, 32

*Davis v. Passman,*
   442 U.S. 228 (1979) ............................................................... 18

*Dellinger v. Bessent,*
   2025 WL 887518 (D.C. Cir. March 10, 2025) ......................................... 24

*Egbert v. Boule,*
   596 U.S. 482 (2022) ............................................................... 18

*Exela Enterprise Solutions, Inc. v. NLRB,*
   32 F.4th 436 (5th Cir. 2022) ..................................................... 10

*Federal Baseball Club of Baltimore v. National League of
   Professional Baseball Clubs,*
   259 U.S. 200 (1922) ............................................................... 17

*Flast v. Cohen,*
   392 U.S. 83 (1968) ............................................................... 17

*Free Enterprise Fund v. Public Company Accountability Oversight
   Board,*
   561 U.S. 477 (2010) ............................................................... 10

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
   527 U.S. 308 (1999) ............................................................... 25

*Haviland v. Butz,*
   543 F.2d 169 (D.C. Cir. 1976) ..................................................... 17

*Hein v. Freedom From Religion Foundation, Inc.,*
   551 U.S. 587 (2007) (plurality opinion) ..................................... 17

*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) .............................................. 2, 8, 11, 12, 13, 15, 25

*In re Sawyer,*
   124 U.S. 200 (1888) ............................................................... 25, 27, 29

iii

*eBay Inc. v. MercExchange, LLC,*
  547 U.S. 388 (2006) ....................................................................... 3, 9, 30

*Kennedy v. Braidwood Management, Inc.,*
  145 S. Ct. 2427 (2025) ................................................................. 14

*Mississippi v. Johnson,*
  71 U.S. (4 Wall.) 475 (1867) ....................................................... 24

*Morrison v. Olson,*
  487 U.S. 654 (1988) ................................................................. 11, 15

*Myers v. United States,*
  272 U.S. 52 (1926) ................................................................. 12, 25

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................. 30

*Schindler Elevator Corp. v. Washington Metropolitan Area Transit*
  *Authority,* 16 F.4th 294 (D.C. Cir. 2021) .................................. 29

*Seila Law LLC v. CFPB,*
  591 U.S. 197 (2020) ................... 2, 8, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 23

*Severino v. Biden,*
  71 F.4th 1038 (D.C. Cir. 2023) .................................... 16, 28, 29

*Swan v. Clinton,*
  100 F.3d 973 (D.C. Cir. 1996) ......................................... 24-25, 26, 28, 29

*Trump v. United States,*
  603 U.S. 593 (2024) ................................................................. 3, 10, 24

*Trump v. Wilcox,*
  145 S. Ct. 1415 (2025) ....................................................... 1, 3, 8, 22, 30, 31

*United States v. Perkins,*
  116 U.S. 483 (1886) ................................................................. 11

*Walton v. House of Representatives,*
  265 U.S. 487 (1924) ................................................................. 27

*White v. Berry*,
   171 U.S. 366 (1898) ........................................................... 26, 27

*Wiener v. United States*,
   357 U.S. 349 (1958) ....................................................... 13, 14, 25

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ................................................................ 13

## Constitution and Statutes:

U.S. Const. art. II, § 1, cl. 1 ...................................................... 1

U.S. Const. art. II, § 2, cl. 2 .................................................... 11

U.S. Const. art. II, § 3 ...................................................... 1, 10, 33

5 U.S.C. § 7101 ....................................................................... 4

   § 7104 ............................................................................... 5

   § 7104(b) ................................................................... 5, 11, 27

   § 7104(c) ........................................................................ 23

   § 7105(a)(1) ...................................................................... 2

   § 7105(a)(2)(A)-(H) ........................................................ 3, 5

   § 7105(a)(2)(C) ................................................................ 21

   § 7105(a)(2)(D) ............................................................... 21

   § 7105(a)(2)(G) ............................................................... 20

   § 7105(a)(2)(I) .................................................................. 6

   § 7105(g) ..................................................................... 5-6

   § 7105(g)(3) .................................................................... 20

   § 7105(h) .................................................................... 6, 21

   § 7118(a)(7)(A)-(D) .......................................................... 6

   § 7123(b) ....................................................................... 20

   § 7132 ............................................................................ 5

   § 7134 ........................................................................ 6, 21

28 U.S.C. § 518 ..................................................................... 6

28 U.S.C. § 1291 ............................................................ 4

28 U.S.C. § 1331 ............................................................ 4

**Other:**

FLRA News, Susan Tsui Grundmann Designated FLRA Chairman
  (Jan. 3, 2023), https://perma.cc/Q3Q9-LBRT ........................................ 7

*Power of the President to Remove Members of the Tennessee Valley
  Authority from Office,*
  39 Op. Att'y Gen. 145 (1938) ...................................................13

# GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| FLRA | Federal Labor Relations Authority |
| FSLMRS or the Statute | Federal Service Labor-Management Relations Statute |
| FTC | Federal Trade Commission |
| JA | Joint Appendix |
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |

## INTRODUCTION

This appeal arises from the district court's order reinstating a principal executive officer of the United States whom the President has lawfully removed.

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. As the Supreme Court has long held, that executive power encompasses the authority to remove those who aid the President in carrying out his duties. The district court, however, countermanded the President's removal of Susan Tsui Grundmann from her position as a Member of the Federal Labor Relations Authority (FLRA), an Executive Branch agency. The court's order reinstated plaintiff into her former office, allowing her to wield executive power over the President's objection. This Court has since stayed plaintiff's reinstatement, following the announcement from the Supreme Court in *Trump v. Wilcox* that "the Government is likely to show that both" agencies "exercise considerable executive power," such that the President "may remove without cause" those agencies' principal officers. 145 S. Ct. 1415, 1415 (2025). The district court's order—in both principle and application— causes grave harm to the separation of powers and undermines the

President's ability to exercise his core Article II authority under the Constitution.

The district court wrongly concluded that because the FLRA is composed of multiple members, Congress can saddle the President with statutory restrictions that restrict his ability to removal principal officers who have lost his trust. But the district court's reliance on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), was misplaced. That case recognized a limited exception to the rule of at-will Presidential removal for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said *not to exercise any executive power*." *Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020) (emphasis added).

This exception does not encompass the FLRA, which plainly exercises executive power in "carrying out the purpose" of the Federal Service Labor-Management Relations Statute. 5 U.S.C. § 7105(a)(1). The FLRA determines the appropriateness of bargaining units for labor organization representation; prescribes criteria and resolves issues related to granting of national consultation rights and determining compelling need for agency rules or regulations; conducts hearings and resolves complaints of unfair labor practices; and resolves exceptions to arbitral awards issued under the

2

statute. *Id.* § 7105(a)(2)(A)-(H). Because the FLRA does not fit within the narrow *Humphrey's Executor* exception, Congress cannot restrict the President's removal authority.

Further, the district court erred in ordering plaintiff reinstated as a principal executive officer. That "permanent injunction" is unavailable under longstanding precedent and is inappropriate because plaintiffs have "remedies available at law, such as monetary damages" in backpay. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Moreover, the balance of hardships and the public interest do not warrant an injunction, as the "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415. That is because reinstatement impinges on the President's "conclusive and preclusive" "power of removal in executive agencies," which "disabl[es] the Congress from acting on the subject," and means that "the courts have 'no power to control [the President's] direction.'" *Trump v. United States*, 603 U.S. 593, 607 (2024). At bottom, the public interest is best served by permitting the elected President to determine who ought to be entrusted with the Constitution's executive power.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. JA13. The district court granted plaintiff summary judgment and issued declaratory and injunctive relief on March 12, 2025. JA33-34. Defendants filed a timely notice of appeal on May 8, 2025. JA70. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the President has authority under Article II of the Constitution to remove Members of the Federal Labor Relations Authority without first having to bear the burden of establishing neglect of duty or malfeasance in office.

2. Whether the district court exceeded its remedial authority in ordering the reinstatement of a principal officer the President determined should no longer be entrusted with executive power.

## STATEMENT OF THE CASE

### I.    Statutory Background

The Federal Labor Relations Authority is an Executive Branch agency that oversees relations between certain non-postal federal employees, their federal employers, and public-sector unions under the Federal Service Labor-Management Relations Statute (FSLMRS or the Statute), 5 U.S.C. § 7101 *et seq*. The FLRA comprises three Members, appointed by the

4

President with the advice and consent of the Senate, who serve fixed five-year terms. *Id.* § 7104. The Statute provides that FLRA Members may be removed "only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 7104(b).

The Statute defines and lists the rights of certain federal employees, labor organizations, and government agencies, and tasks the FLRA with realizing the Statute's directives. Among other things, the FLRA is directed to: determine the appropriateness of units for labor organization representation; prescribe criteria and resolve issues related to granting of national consultation rights and determining compelling need for agency rules or regulations; conduct hearings and resolve complaints of unfair labor practices; and resolve exceptions to arbitral awards issued under the Statute. 5 U.S.C. § 7105(a)(2)(A)-(H).

The Statute grants the FLRA a broad array of means to carry out these functions, including the authority to: "(1) hold hearings; (2) administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in [5 U.S.C. § 7132]; and (3) * * * require an agency or a labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter." 5 U.S.C.

§ 7105(g); *see also id.* § 7105(a)(2)(I) (authorizing the FLRA to take "actions as are necessary and appropriate to effectively administer the provisions of" the Statute). When resolving complaints of unfair labor practices, for example, the FLRA may issue an order requiring an agency or labor organization to "cease and desist from any such unfair labor practice;" "requiring the parties to renegotiate a collective bargaining agreement;" "requiring reinstatement of an employee with backpay;" and "including * * * such other action as will carry out the purpose of this chapter." *Id.* § 7118(a)(7)(A)-(D).

The FLRA possesses other significant powers. It is authorized to "prescribe rules and regulations to carry out the provisions of this chapter." 5 U.S.C. § 7134. With the exception of litigation before the Supreme Court as provided in 28 U.S.C. § 518, the FLRA may also send its own attorneys to "represent the Authority in any civil action brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law." 5 U.S.C. § 7105(h).

## II.    Factual Background and This Litigation

**A.** Plaintiff Grundmann was nominated by President Biden to serve on the FLRA, confirmed by the Senate, and subsequently designated as

6

FLRA Chairman. JA13 ¶ 3.[1] In February 2025, President Trump removed her from office as a Member of the FLRA without a determination that she had neglected her duty, been inefficient, or committed malfeasance in office, JA16 ¶¶ 16-17, and named Colleen Kiko Duffy as Chairman of the FLRA, JA13 ¶ 5, JA16 ¶ 19. Plaintiff sued and moved for summary judgment, which the district court granted on March 12, 2025, entering a permanent injunction and a declaratory judgment. The district court concluded that the FLRA "satisfies the *Humphrey's Executor* exception, making the [statutory] removal provision a valid exercise of Congress's constitutional authority." JA52. The court declared Grundmann's removal "unlawful," JA33, and ordered that she "shall continue to serve as a Member of the" FLRA "until her term expires * * * unless she is earlier removed 'upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office,'" JA34. The court further enjoined defendant Colleen Duffy Kiko, and her subordinates and agents, from "removing [Grundmann] from her office without cause," treating her as having been removed, denying her access to the "benefits or resources of the office," or obstructing her authority. JA34.

---

[1] *See also* FLRA News, Susan Tsui Grundmann Designated FLRA Chairman (Jan. 3, 2023), https://perma.cc/Q3Q9-LBRT.

**B.** At the time of the district court's order, this Court was considering whether the government was entitled to stays pending appeal of similar orders reinstating principal executive officers. *See Wilcox v. Trump*, No. 25-5057 (D.C. Cir.). The Supreme Court granted a stay pending appeal in *Wilcox* in May 2025. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025). Following the Supreme Court's decision, this Court subsequently stayed the district court's injunction here. JA82 (administrative stay); Order, *Grundmann v. Trump*, No. 25-5165 (D.C. Cir. July 3, 2025) (granting stay pending appeal).

## SUMMARY OF ARGUMENT

**I.** The Constitution vests the President with the general authority to remove principal executive officers at will. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14 (2020). The Supreme Court has recognized two narrow exceptions to the President's removal power—one exception for certain inferior officers (not at issue here), *id.* at 217, and another for multimember agencies that exercise "no part of the executive power" and "do not wield substantial executive power," *id.* at 215, 218. Because the FLRA wields substantial executive power, it does not fit within the narrow exception established by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and its Members must be removable at will.

8

**II.** Separately, the district court erred by ordering that plaintiff be fully reinstated as a principal officer heading an agency. The district court's order amounts to *de jure* reinstatement beyond the equitable authority of the court. A court may not enjoin the President in performance of his official duties, including the appointment and removal of principal officers. Accordingly, when principal officers have challenged their removal from office, they have historically sought legal remedies like backpay, not reinstatement. The court further erred in concluding mandamus was an alternative remedy, when plaintiff has not demonstrated a clear entitlement to relief based on a failure to carry out a ministerial duty. Finally, even if plaintiff could demonstrate that she prevails on the merits, equitable considerations favor the government such that the entry of a permanent injunction was an abuse of discretion.

**STANDARD OF REVIEW**

The Court reviews the grant of summary judgment de novo. *American Bankers Association v. National Credit Union Administration*, 934 F.3d 649, 662 (D.C. Cir. 2019). The grant of permanent injunctive relief is reviewed for abuse of discretion. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

9

## ARGUMENT

## I.   The President Has Constitutional Authority To Remove FLRA Members At Will

### A.   The President's Presumptive Power Of Removal and Its Limited Exceptions

**1.** Article II of the Constitution provides that "the 'executive Power'— all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President and Vice-President are the only elected officials within the entire Executive Branch, and responsibility to the electorate requires that those wielding the President's executive authority must remain accountable to the President. *Id.* at 224. Accordingly, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Company Accountability Oversight Board*, 561 U.S. 477, 513-14 (2010). It is thus well established that the President's removal power "is essential to the performance of his Article II responsibilities," *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and Congress cannot control the President's "conclusive and preclusive" removal authority "with respect to 'executive officers of the United States whom he has appointed,'" *Trump v. United States*, 603 U.S. 593, 608-09 (2024).

10

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 204. First, the Court has held that "Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties." *Id.*[2] Second, *Humphrey's Executor*, 295 U.S. 602 (1935), held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Those exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent. *Id.* at 218.

As the district court noted, JA66, FLRA Members are principal rather than inferior officers: they are appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 7104(b), oversee their own department, and are not subservient to any other principal officer. Thus, the relevant question is whether the FLRA can be said to perform only "legislative and judicial functions" and therefore falls within

---

[2] *See, e.g.*, *United States v. Perkins*, 116 U.S. 483 (1886); *Morrison v. Olson*, 487 U.S. 654 (1988).

11

the exception identified in *Humphrey's Executor*. *Seila Law*, 591 U.S. at 216. It does not.

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623. Despite reaffirming the then-recent holding in *Myers v. United States*, 272 U.S. 52 (1926), that the President has "unrestrictable power * * * to remove purely executive officers," the Court concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President." *Humphrey's Executor*, 295 U.S. at 628, 632. Instead, *Humphrey's Executor* understood the FTC to be a "body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* at 628. Those duties, according to the Court, "c[ould] not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court understood the FTC not to be exercising executive power at all but rather to "ac[t] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* upheld the provision restricting the removal of FTC Commissioners.

Soon after *Humphrey's Executor* was decided, its reach across the Executive Branch was understood to be limited. In 1938, Attorney General Robert Jackson explained that *Humphrey's Executor* did not apply to the Tennessee Valley Authority, which "does not exercise quasi-legislative or quasi-judicial functions," and thus the President enjoyed his "ordinary power to remove executive officers appointed by him." *Power of the President to Remove Members of the Tennessee Valley Authority from Office*, 39 Op. Att'y Gen. 145, 146-47 (1938). Thus, whatever the bounds "of congressional control" for quasi-judicial, quasi-legislative agencies, the President's "exclusive power of removal in executive agencies * * * continued to be asserted and maintained." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 n.4 (1952) (Jackson, J., concurring). That limitation was reiterated in *Seila Law*, which explained that *Humphrey's Executor* is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power. 591 U.S. at 216-17 (quoting *Humphrey's Executor*, 295 U.S. at 632).

Under *Humphrey's Executor*, the Supreme Court has sustained removal restrictions for the head of an executive agency on a single occasion. In *Wiener v. United States*, 357 U.S. 349 (1958), the Court held that the President lacked authority to remove a member of the War Claims

13

Commission—a temporary agency created solely to hear and adjudicate benefits claims for "internees, prisoners of war, and religious organizations" who suffered injury "at the hands of the enemy" in World War II. *Id.* at 349-50. Although Congress did not impose any statutory removal restrictions, *id.* at 352, the Court held that the Commission's "tasks require absolute freedom from Executive interference," *id.* at 353. The Court thus held that the President could not remove a member of the Commission under "[t]he philosophy of *Humphrey's Executor*." *Id.* at 356.[3]

But the assumption on which *Humphrey's Executor* and *Wiener* rest—that those agencies' "quasi-legislative" and "quasi-judicial" powers were not actually executive power under the Constitution—has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). Executive agencies "since the beginning of the Republic" have made rules and conducted adjudications. *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). While "[t]hese activities take 'legislative' and 'judicial' forms," they remain "exercises of—indeed, under our constitutional structure they *must be* exercises of—the

---

[3] The Supreme Court has since made clear that it will not infer removal restrictions, and Congress must "use very clear and explicit language" to "take away the power of at-will removal from an appointing officer." *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2448 (2025) (quotation marks omitted).

'executive Power.'" *Id.* In other words, *Humphrey's Executor*'s conclusion that the 1935 FTC "did not exercise executive power has not withstood the test of time," *Seila Law*, 591 U.S. at 216 n.2, and "it is hard to dispute that" the agency's powers "would at the present time be considered 'executive,' at least to some degree," *Morrison v. Olson*, 487 U.S. 654, 689 n.28, 691 (1988). Thus, nothing in *Humphrey's Executor*'s holding establishes a categorical approval for removal protections for multimember agencies that exercise materially different and materially greater executive power than the 1935 FTC.

Indeed, *Seila Law* confirms that *Humprey's Executor*'s holding does not include "latent powers that the [1935 FTC] may have had" but which were "not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. The Court instructed that *Humphrey's Executor* must be understood "on its own terms," *id.*, and that it approved removal restrictions for "an officer who occupies no place in the executive department and who exercises no part of the executive power," *Humphrey's Executor*, 295 U.S. at 628. Thus, while the *Seila Law* dissenters detailed the various and substantial executive powers that the 1935 FTC possessed, including investigations, enforcement actions, adjudications, rulemaking, and litigation authority, *Seila Law*, 591 U.S. at 286 n.10 (Kagan, J., concurring in the judgment with

respect to severability and dissenting in part), the Court explained that "what matters" for judging the constitutionality of different agencies "is the set of powers the [*Humphrey's Executor*] Court considered as the basis for its decision," *id.* at 219 n.4 (majority opinion).

As the district court recognized, the FLRA undoubtedly wields executive power, including certain powers that are "greater than was described in *Humphrey's Executor*." JA47. The district court erred in adopting an overbroad reading of that case, JA47-50, stretching it beyond its facts to uphold removal protections for an agency that "possesses substantially more executive power than the FTC did back in 1935." *CFPB v. Seila Law LLC*, 923 F.3d 680, 683 (9th Cir. 2019) (upholding the CFPB's removal restrictions), *vacated and remanded*, 591 U.S. 197. *Humphrey's Executor* does not extend so far, and after *Seila Law*, "only a very narrow reading of" that case "is still good law," meaning there is little "left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

Reading *Humphrey's Executor* as confined to the precise considerations then before the Court is consistent with how the Supreme Court and courts of appeals have applied binding precedent whose

16

underlying foundations have since been eroded. For example, *Flast v. Cohen*, 392 U.S. 83 (1968), held that taxpayers have standing to challenge statutes "authorizing the use of federal funds in a way that allegedly violates the Establishment Clause," *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion). But the Supreme Court has refused to extend *Flast* to encompass other alleged violations of the Constitution or to executive expenditures not dictated by statute. *Id.* at 609-10 (collecting cases). Instead, *Flast* has a "narrow application" and "has largely been confined to its facts." *Id.* at 609.

The courts have likewise narrowly applied *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*, 259 U.S. 200 (1922), which held that the sport of baseball was not subject to the antitrust laws, reasoning that baseball games were played and completed in a single state and thus were not interstate commerce even if teams continually travelled across state lines. *Id.* at 208-09. The Supreme Court has since rejected that understanding of interstate commerce, and it is "clear * * * the principle enunciated in *Federal Baseball* * * * is not to be extended to other businesses." *Haviland v. Butz*, 543 F.2d 169, 175 (D.C. Cir. 1976).

Similarly, the Supreme Court has held that under circumstances presented in *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980), courts may infer a damages cause of action directly under the Constitution. But the Court has stressed that, if there is "any reason to think that Congress might be better equipped to create a damages remedy," the courts may extend those cases no further. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *accord Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023).

**2.** The district court mistakenly read *Seila Law* as ratifying a rule more tolerant of removal protections for the heads of multimember agencies. Accordingly, because the FLRA exercises "substantial executive power," *Seila Law*, 591 U.S. at 218, it falls outside the exception for multimember agencies recognized in *Seila Law*. Indeed, even this articulation of the test may be overly tolerant of restrictions on the President's removal authority. After *Seila Law*, the Supreme Court clarified that "Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Collins v. Yellen*, 594 U.S. 220, 253 (2021); *see also id.* at 273 (Kagan, J., concurring in part and concurring in the judgment) (stating that the *Collins* majority "extend[ed]" *Seila Law*'s holding and dropped the

18

qualifier of "significant" executive power); *id.* at 293 (Sotomayor, J., concurring in part and dissenting in part) (noting that the "words" "significant executive power" "appear nowhere in today's decision"). Under this articulation, any exercise of executive power subjects an agency head to the President's control.

The district court mistakenly invoked *Collins* to support its conclusion that the FLRA's removal restrictions should be upheld. JA45. But the point in *Collins* was that once the Court had determined that a federal agency exercised executive power, it presumptively fell within the President's control of at-will removal, and courts are not well suited to craft judicial exceptions to the Constitution's structure for the chain-of-command in the Executive Branch. "At-will removal ensures that" principal officers "will depend, as they ought, on the President, and the President on the community" and "[t]hese purposes are implicated whenever an agency does important work," which courts are not "well-suited" to weigh and compare. *Collins*, 594 U.S. at 252-53. Because the FLRA exercises substantial executive authority, *see infra* pp. 20-23, under any articulation of the test, the statutory limitations on the President's removal of FLRA Members are invalid.

19

**B. FLRA Members Must Be Removable At Will**

The FLRA is not a "mere legislative or judicial aid," *Seila Law*, 591 U.S. at 218. It wields significant executive authority, including engaging in significant executive adjudication, enacting substantive rules that bind regulated entities, and directing litigation on behalf of the agency in federal court. Given its varied and substantial executive powers, Congress may not restrict the President's constitutional authority to remove the agency's Commissioners.

The FLRA "conduct[s] hearings and resolve[s] complaints of unfair labor practices," 5 U.S.C. § 7105(a)(2)(G), in which it "unilaterally issue[s] final decisions awarding legal and equitable relief," *Seila Law*, 591 U.S. at 219 (explaining that issuing unilateral decisions in administrative adjudications is exercising executive power). It can "require [an agency or labor organization] to take any remedial action it considers appropriate to carry out the policies" of the Statute, 5 U.S.C. § 7105(g)(3), and petition to enforce such an order in federal court, *id.* § 7123(b); *see Seila Law*, 591 U.S. at 219 (describing authority to enforce in federal court as "quintessentially executive power not considered in *Humphrey's Executor*"). And the FLRA has the authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection

with any of its functions. 5 U.S.C. § 7105(h); *see also Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976) (recognizing interpreting and enforcing law through litigation as executive function).

The district court correctly acknowledged that "'the power to seek daunting monetary penalties against private parties in federal court' is 'a quintessentially executive power.'" JA48 (quoting *Seila Law*, 591 U.S. at 219). But it mistakenly discounted the FLRA's enforcement authority because it did not think it was "clear that the object of an FLRA order—an agency or labor union—should be considered a private party." *Id.* This conclusion is incorrect; a labor union is a private party. And "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley*, 424 U.S. at 138.

Moreover, the FLRA also possesses the power to "prescribe rules and regulations to carry out the provisions of" the Statute. 5 U.S.C. § 7134; *see also id.* § 7105(a)(2)(C) (authorizing FLRA to "prescribe criteria * * * relating to the granting of national consultation rights under section 7113"); *id.* § 7105(a)(2)(D) (authorizing FLRA to "prescribe criteria * * * relating to determining compelling need for agency rules or regulations"). "[I]nterpreting a law enacted by Congress to implement the legislative

mandate is the very essence of 'execution' of the law," and so an agency "empowered to issue a 'regulation or order' * * * clearly exercises executive power." *Collins*, 594 U.S. at 254.

The district court's assessment that the FLRA is an adjudicatory board and only has "narrow" regulatory authority, JA49, does not change the analysis. As the Supreme Court made clear in *Collins*, the "nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's [removal] power." *See Collins*, 594 U.S. at 251-52. "Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies," and "the constitutionality of removal restrictions [does not] hinge[] on such an inquiry." *Id.* at 253.

Fundamentally, the FLRA exercises executive power—indeed substantial executive power. Because the FLRA exercises executive power, it does not fall within the narrow *Humphrey's Executor* exception. FLRA Members must therefore be removable at will by the President. The Supreme Court has recently recognized that the government is likely to show that Members of the NLRB and MSPB "exercise considerable executive power." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). And in granting a stay pending appeal here, this Court similarly recognized that

22

the FLRA's powers are "substantially similar to those of the NLRB." Order
at 2 (D.C. Cir. July 3, 2025). Accordingly, the FLRA "wield[s] executive
power" and therefore must be accountable to the President by at-will
removal. *See Seila Law*, 591 U.S. at 204 ("The President's power to
remove—and thus supervise—those who wield executive power on his
behalf follows from the text of Article II."). The district court's contrary
conclusion was wrong and should be reversed.

## II.  The District Court Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed

**A.** The district further court erred by declaring that plaintiff "remains
a Member of the [FLRA]" and ordering that she "shall continue to serve as a
Member." JA33-34. Under the court's order, then, plaintiff could
potentially continue to serve as a principle executive officer until 2029 even
though the President has determined that she ought not be entrusted with
executive authority.[4]

This *de jure* reinstatement is beyond the equitable authority of the
court to impose because reinstatement impinges on the President's

---

[4] Plaintiff can stay in office until the earlier of (a) the date her
successor takes office, or (b) "the last day of the Congress beginning after"
July 1, 2025, *i.e.*, the 120th Congress that will convene from 2027–2029. 5
U.S.C. § 7104(c).

"conclusive and preclusive" "power of removal in executive agencies," which "disabl[es] the Congress from acting upon the subject," and means that "the courts have 'no power to control [the President's] discretion.'" *Trump*, 603 U.S. at 607. There would be no doubt of "grave and irreparable" injury if the district court had ordered reinstatement of a dismissed Secretary of State, and any differences between the Department of State and the FLRA "g[o] to the extent—not the character—of the President's injury." *Dellinger v. Bessent*, 2025 WL 887518, at *3 (D.C. Cir. March 10, 2025). The grant of an impermissibly broad remedy is an independent basis for this Court to reverse the district court's order.

The Supreme Court recognized long ago that a court "has no jurisdiction * * * to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). The appointment and removal of principal officers is specifically entrusted to the President, *see Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and thus a court may not, by injunction, order the reinstatement of a principal officer the President has removed. Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for back

24

pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same). That reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he has removed from office.

Moreover, to the extent the district court concluded that injunctions against the President's subordinates pose no problem, *see* JA59-64, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is * * * well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying

removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *accord Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (observing that "courts of equity at the time of the founding were apparently powerless" to stop the removal of executive officers).

The district court's order cannot be squared with these precedents. In its opinion, the court grappled with the above case law, concluding that it could provide declaratory relief limited to the declaration that the removal was "unlawful." JA54. The court also determined that it did not need to resolve the question whether formal equitable reinstatement was available stating that Grundmann had sought, and the court was granting, only the *de facto* reinstatement discussed by this Court in *Swan*, 100 F.3d at 979-80. But the court's declaration that plaintiff shall continue to remain a Member of the FLRA, JA33-34, goes well beyond such limited declaratory relief and constitutes full reinstatement. This is particularly true when viewed next to the injunctive relief granted by the Court ordering that she "shall continue to serve as a Member of the" FLRA "until her term expires * * * unless she is earlier removed 'upon notice and hearing and only for

26

inefficiency, neglect of duty, or malfeasance in office,'" JA 34 (quoting 5 U.S.C. § 7104(b)). Notwithstanding its discussion in the opinion, the only way to read the district court's order is as *de jure* reinstatement. However styled, an order reinstating a principal officer removed by the President violates Article II.

The equitable principles precluding reinstatement of a removed officer apply equally to subordinates. Nothing in *Baker* or *Sawyer* suggests that the longstanding principle that "traditional limit[s] upon equity jurisdiction" prohibit a court from "staying removal of a federal officer" do not apply as long as an injunction runs to a subordinate officer. *See Baker*, 369 U.S. at 231 (citing *In re Sawyer*, 124 U.S. 200; *Walton v. House of Representatives*, 265 U.S. 487 (1924); and *White*, 171 U.S. 366). Only the President has the authority to appoint, remove, and supervise agency heads, so any relief ordered by the Court that prevents plaintiffs' removal necessarily targets the President. *Dellinger*, 145 S. Ct. at 516 (Gorsuch, J., dissenting) (explaining that a reinstatement order "effectively command[s] the President * * * to recognize and work with someone whom the President sought to remove from office"). Regardless of whom the order formally applies to, and however styled, an order that has the effect of

27

reinstating a principal executive officer removed by the President violates both Article II and the limits on a court's equitable powers.

The district court's reliance on *Swan* and *Severino*, is also misplaced. Those decisions do not bear the weight the district court placed on them. In neither case did this Court review, much less sustain, an order like the ones presented here. Rather, the Court considered only its *jurisdiction* over an official's challenge to his removal. At most those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings" or "giving him access to his former office." *Swan*, 100 F.3d at 980; *see also Severino*, 71 F.4th at 1043. The order issued by the district court here goes well beyond such *de facto* relief; it puts plaintiff back in office and orders that she shall continue to serve as a *de jure* Member until the conclusion of her term.

Moreover, in both *Swan* and *Severino*, the Court recognized that even *de facto* relief—an order directing subordinate officials to treat the officer as not having been removed—might not ultimately be available even if the plaintiff were to prevail on the merits. In *Swan*, the Court recognized that the President could "undercut [the] relief" were he "to insist that" his preferred replacement "occupy the position," 100 F.3d at 980-81, and in

28

*Severino*, the Court noted other potential obstacles and relied on the fact that "at the motion to dismiss stage," the plaintiff needed only to "plausibly allege that relief could be afforded," 71 F.4th at 1043.

The sole issue addressed in *Severino* and *Swan* was whether the limits on the Court's equitable power against the President made the asserted injury non-redressable. *See Severino*, 71 F.4th at 1042 ("[O]ur jurisdiction does not depend on deciding whether an injunction ordering a presidential appointment would be available or appropriate."). Those cases cannot be read to have rejected the separate longstanding principle that equitable power may not be used to "restrain by injunction the removal of a [public] officer," *In re Sawyer*, 124 U.S. at 212, a principle not briefed or addressed in either of those cases. *Cf. Schindler Elevator Corp. v. Washington Metropolitan Area Transit Authority*, 16 F.4th 294, 299 (D.C. Cir. 2021) (an appellate decision in which a defect "is neither noted nor discussed * * * does not stand for the proposition that no defect existed"). Those cases therefore did not definitively resolve the question presented here. Because neither Swan nor Severino prevailed on the merits, the Court did not need to consider whether equitable relief would have been appropriate against the backdrop of those historic principles to resolve the

case. Thus, *Swan* and *Severino* may assist plaintiff in establishing standing, but they cannot justify the relief the district court entered.

**B.** Even where a plaintiff has prevailed on the merits, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *accord Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Service*, 64 F.4th 1354, 1361 (D.C. Cir. 2023) (applying *eBay*). Thus, even if the Court concludes that plaintiff should prevail on the merits, it should reverse the grant of a permanent injunction because the court abused its discretion in granting equitable relief to reinstate plaintiff. This Court has made clear that when granting a permanent injunction, the district court must consider "the balance of hardships between the plaintiff and defendant" and whether "the public interest would not be disserved by a permanent injunction." *Zukerman*, 64 F.4th at 1364 (quoting *eBay*, 547 U.S. at 391). The public interest and balance of equities factors merge where, as here, the government is the defendant. JA67 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The equitable factors likewise decisively favor the government. In *Wilcox*, 145 S. Ct. at 1415, the Supreme Court stayed district court orders

reinstating members of the MSPB and NLRB, and premised that stay on its observation that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." And this Court recognized that the equitable calculus is identical here. Order at 2 (D.C. Cir. July 3, 2025).

As a result of the district court's order, a principal officer whom the President has chosen to remove from office will exercise executive power over the President's objection. It is accordingly unsurprising that the Supreme Court has emphasized that the equities decisively favor the government while staying orders that reinstate principal officers. In *Wilcox*, the Court granted immediate interim relief to the government, holding that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415. And in staying the district court's order here, this Court explained that "[t]he Supreme Court's reasoning fully applies to the FLRA, which possesses powers substantially similar to those of the NLRB." Order at 2 (D.C. Cir. July 3, 2025).

Conversely, forgoing reinstatement would not harm plaintiff. Although removal deprives her of employment and salary, the traditional remedy for such claims has been an award of backpay, not reinstatement. Backpay would not enable plaintiff to perform the duties of her former offices, but those duties are vested in the office, and plaintiff has no personal right to exercise the powers of an office after having been removed. The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987). Executive power belongs to the President, not to plaintiff.

Finally, if the government prevails after all review, any actions taken by the FLRA with plaintiff as a reinstated Member will be called into question and potentially voidable, upsetting expectations and risking placing regulated parties in a whipsaw. *See Collins*, 594 U.S. at 259-60 (explaining that plaintiffs contesting agency action based on unconstitutional removal restrictions can show "compensable harm" if "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision holding that he did not have 'cause'

for removal"). The need for the FLRA in the future to reconsider those prior actions may interfere with its ability to timely process other pending matters. Plaintiff's claimed equities cannot outweigh the grave and unprecedented harm this injunction causes to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
    *Assistant Attorney General*

ERIC D. McARTHUR
    *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
LAURA E. MYRON
 */s/ Daniel Aguilar*
DANIEL AGUILAR
    *Attorneys, Appellate Staff*
    *Civil Division*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,900 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar